IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

NICOLE WINSTEAD, STEPHEN PETTUS,
ARETHA WARD, LETA ANTHONY &
R.S. McCULLOUGH                                                                                    PLAINTIFFS

vs.                                   No. 4:07-CV-682 (WRW)

MARK STODOLA, in his individual and official capacity,
TOM CARPENTER, in his individual and official capacity,
CITY OF LITTLE ROCK, STACY HURST, in her individual
and official capacity, BRAD CAZORT, in his individual and
official capacity, MICHAEL KECK,  in his individual and
official capacity, DORIS WRIGHT, in her individual and
official capacity, DEAN KUMPURIS, in his individual and
official capacity, KENT WALKER, in his individual and
official capacity, MARTHA McCASKILL, in her individual
and official capacity, OZELL SNIDER, in his individual and
official capacity, SUSAN INMAN, in her individual and
official capacity, MIKE BEEBE, in his individual and
official capacity, and the STATE OF ARKANSAS                                     DEFENDANTS

MEMORANDUM BRIEF IN SUPPORT OF
MOTION TO DISMISS CITY OF LITTLE ROCK DEFENDANTS

*Preliminary Statement*

In an action filed six days before a scheduled election to modify the powers of the Mayor of the City of Little Rock, Arkansas, plaintiffs[1] ("Winstead") seek to enjoin the election, and to challenge the referred ordinance. The allegations contained in the Complaint make conclusory statements that the referred ordinance violates the 42 U.S.C. § 1973, 42 U.S.C. § 1983, the First, Fourth, Fifth, Fourteenth and Fifteenth Amendments of the U.S. Constitution. The Complaint further seeks

damages and other relief as set out below for arbitrary and capricious actions,
due and equal process violations, vote dilution, impermissible retrogression

---

[1]   The listed plaintiffs are Ms. Nicole Winstead, Mr. Stephen Pettus, Ms. Aretha Ward, Ms. Leta Anthony, and Mr. R.S. McCullough. All of the plaintiffs are listed in a Complaint filed by Mr. Ricky Hicks, a Little Rock attorney. However, Mr. McCullough is also listed as a *pro se* plaintiff. In any event, the parties will be jointly referred to as "Winstead" for the balance of this brief.

and the like, and other tort law concepts, including common law concepts . [Winstead] further invoke the pendent jurisdiction of this court to hear and decide claims arising under State law, including but not limited to conflict of interest, official improprieties and other similar claims relative to the matters herein.

*Nicole Winstead, et al v. Mark Stodola, et al,* No. 4:07-CV-00682 (WRW), Docket No. 1 at 2.(hereafter *Winstead v. Stodola,* Docket No. __ at __).

The phrases used in the Complaint implicate Section 2 and Section 5 violations of the Voting Rights Act; constitutional provisions for which redress may be sought pursuant to 42 U.S.C. § 1983; and unidentified claims under state law and common law. As will be demonstrated below, because the Complaint fails to allege the elements of each of these claims, this Court should dismiss the Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6)[2] for failure to state a claim upon which relief can be granted.

### *Standard of Review*

When reviewing a motion to dismiss, the Court is to "accept all factual allegations in the complaint as true and grant every reasonable inference in favor of the nonmovant." *Brown v. Simmons,* 478 F.3d 922, 923 (8th Cir. 2007). However, "[t]o state a claim upon which relief can be granted, *each element of the claim must be pled in the complaint.*" Id.; *see also, Dura Pharmacy, Inc. v. Broudo,* 544 U.S. 336,, 346-47 (2005).

### *Elements of a Section 2 Claim Under the Voting Rights Act*

While efforts to protect the rights of certain groups, particularly African-Americans, to vote date back to the Civil War, and there was an effort in 1957 to provide greater avenues for the United States to pursue these protections, it was not until the Voting

---

[2] In relevant part, the Rule reads:

> Every defense, in law or fact, to a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by made by motion: . . . (6) failure to state a claim upon which relief can be granted.

Fed.R.Civ. Proc. 12

Rights Act of 1965 that the federal government was given the tools to abolish discriminatory practices. The Voting Rights Act of 1965[3] (hereafter "the VRA")

> . . . was designed by Congress to banish the blight of racial discrimination in voting, which . . . infected the electoral process in parts of our country for nearly a century. The Act create[d] stringent new remedies for voting discrimination where it persist[ed] on a pervasive scale, and in addition the statute strengthen[ed] existing remedies for pockets of voting discrimination elsewhere in the country.

*South Carolina v. Katzenbach,* 383 U.S. 301, 308 (1966).[4]

Section 2 of the VRA[5] prohibited voting qualifications, prerequisites, standards or practices which would deny or abridge as person's constitutional right to vote.[6] This kind of discrimination can be identified by obvious means such as the use of a literacy test to disqualify a potential voter, or it can occur by selection of a practice that results in voter dilution. Voter dilution, a retrogressive practice, or fractionalization of the vote of a particular community, are examples of Section 2 violations. "The essence of a §2 claim is that a certain electoral law, practice, or structure, interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred candidates." *Thornburgh v. Gingles,* 478 U.S. 30, 79 (1986); *see also, Bone Shirt v. Hazeltine,* 461 F.3d 1011, 1018 (8th Cir. 2006); *Cottier v. City of Martin,* 445 F.3d 1113, 1116 (8th Cir. 2006).

Here, Winstead effectively claims that a referred ordinance which provides additional powers to the City mayor, including the power of the veto, constitutes a "law, practice or

---

[3] 42 U.S.C. §§ 1973;1973a-c; 1973f; 1973h-j; 1973k; 1973n-p.

[4] In *Katzenbach,* the U.S. Supreme Court upheld the Voting Rights Act against challenges from several states as to its constitutionality. The Court concluded that Congress had the power to enact the provisions pursuant to § 2 of the Fifteenth Amendment to the U.S. Constitution. This provision granted Congress the authority to create remedies against racial discrimination in voting.

[5] 42 U.S.C. 1973a.

[6] Holder v. Hall, 512 U.S. 874, 880 (1994).

structure" which would preclude the City's African-American population from being able to elect its candidates. Such an allegation is not enough. More to the point, as to the City, such an allegation is not even accurate since Directors Erma Fingers Hendrix, Doris Wright, and Ken Richardson, are African-American.[7]

In order to avoid dismissal pursuant to Fed. R. Civ. Proc. 12(b)(6), however, Winstead is required to plead all of the elements of a Section 2 VRA claim. These three elements are: (1) That there is a racial group sufficiently large and geographically compact to constitute a majority in a single-member district; (2) the racial group is politically cohesive; and (3) the majority votes as a bloc often enough to defeat the preferred candidate of the minority group. *League of United Latin American Citizens v. Perry,* 126 S.Ct. 2594, 2614 (2006); *Bone Shirt v. Hazeltine,* 461 F.2d at 1018. Further, Winstead would have to show that

> . . . based upon the totality of the circumstances, it is shown that the political processes leading to nomination or election . . . are not equally open to participation by members of [a racial group] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*League of United Latin American Citizens*, 126 S.Ct. at 2613-14; *Bone Shirt,* 461 F.3d at 1018.

The Complaint in this case does not fulfill any of these requirements. More to the point, the allegation of vote dilution, fractionalization, or retrogression, deals with a power given to the City mayor -- whoever fills that role now and in the future – and not with an electoral system where equal access or equal opportunity is denied.

Winstead never claims that Mayor Stodola, for example, did not receive African-American votes. Nor is there a claim that African-Americans are prohibited from voting in the election on the referred ordinance that would provide the City mayor with more authority. Section 2 does not deal with the executive function of a member of a governing

---

[7] Winstead listed Director Wright as a defendant in the lawsuit. Winstead v. Stodola, Docket No. 1 at ¶ 5. Directors Hendrix and Richardson are referred to in ¶ 17.

body, it deals with whether an identifiable group, because of some practice, is precluded from being able to elect a representative to the government body. There is absolutely no allegation in the Complaint that suggests that African-Americans have been denied the opportunity to elect members of the City Board of Directors.

Further, whatever complaints Winstead may have about the proposed mayoral veto, the mere fact that a governing scheme allows a veto does not state as Section 2 claim. In another context, even when an unelected state official is given veto power over the decisions of a local governing body, there is no constitutional infirmity. *See Moore v. Detroit School Reform Bd.*, 293 F.3d 352, 371 (6th Cir. 2002).[8]

While there are words in the Complaint such as "vote dilution," or "fractionalization," or "retrogressive" -- i.e., the tests that are used to determine if a Section 2 violation has occurred – nothing in the Complaint addresses, lists, or supports, any claim that the elements of a Section 2 claim are plead, apparent, or met. This failure to plead each element of the claim in the Complaint requires that this Court dismiss the Complaint pursuant to Fed. R. Civ. Proc. 12 (b)(6). *Dura Pharmacy, Inc. v. Broudo,* 544 U.S. at 346-47; *Brown v. Simmons,* 478 F.3d at 923.

### *Elements of a Section 5 Claim Under the Voting Rights Act.*

The failure to plead the elements of a Section 5[9] claim under the Voting Rights Act is even more apparent. This section applies to voter qualifications, prerequisites to voting, or practices to prohibit voting. However, it does not apply to all jurisdictions in the United States. Section 5 was enacted to require that jurisdictions with the greatest history of discriminatory actions to preclude an identifiable group from voting could not change any voting practice without approval of the U.S. Department of Justice, or a three-judge

---

[8] The precise claim as to the veto was that the State had control over the local governing body because the state official could veto certain decisions. The legal allegation was that no rational basis existed for such power and, therefore, the veto power denied Equal Protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution. Because of the crisis situation involved the Detroit school system, and the need to assure an adequate education, the Sixth Circuit upheld the experimental legislation on how to govern the district. More to the point, the experiment did not involve any suspect classification, nor fundamental right.

[9] 42 U.S.C. § 1973c.

panel of the U.S. District Court for the District of Columbia.[10] Arkansas is not, nor ever has been, one of the jurisdictions impacted by Section 5.[11]



---

**10**   Id.. The 1965 Act was recently renewed by the FANNIE LOU HAMER, ROSA PARKS, AND CORETTA SCOTT KING VOTING RIGHTS ACT REAUTHORIZATION AND AMENDMENTS ACT OF 2006, 120 STAT. 577, P.L. 109-246.

**11**   http://www.votingrights.org/vra_info/infoimages/pdf/section5%20cover.pdf (last accessed August 12, 2007). In the event it is not possible to see the color differentiation, the impacted jurisdictions are: Alaska, at-large positions; Alabama, 1-7th Congressional districts ("districts"); Arizona, 1st-8th Districts; California, 2nd , 3rd,4th.5th, 7th-53rd Districts; Colorado, 1st, 3rd, 4th Districts; Connecticut, 1st-5th Districts; Florida, 3rd,7th,8th,9th,11th-25th Districts; Georgia, 1st-13th Districts; Hawaii, 1st, 2nd Districts; Idaho, 1st,2nd Districts; Illinois, 1st-10th,13th, 14th Districts; Illinois, 1st-10th Districts; Kansas, 1st District; Louisiana, 1st-7th Districts; Maryland, 4th,6th,8th Districts; Maccachusetts, 1st,2nd,5th,8th,9th Districts; Michigan, 5th,6th Districts; Mississippi, 1st,2nd,3rd,4th Districts; Montana, At-large District; Nebraska, 1st,3rd Districts; Nevada, 1st,2nd,3rd Districts; New Hampshire, 1st,2nd Districts; New Jersey, 2nd, 5th-13th Districts; New York, 1st-19th Districts; North Carolina, 1st,2nd,3rd,5th-13th Districts; North Dakota, At-Large District; Oklahoma, 3rd District; Oregon, 2nd District; Pennsylvania, 1st,2nd,8th, 13th Districts; Rhode Island, 1st,2nd Districts; South Carolina, 1st-6th Districts; South Dakota, At-large District; Texas, 1st-32nd Districts; Utah, 2nd District; Virginia, 1st-11th Districts; Washington, 1st,2nd,4th,5th,7th,8th,9th Districts. DANIEL LEVITAS, IRA GLASSER, *Reauthorizing the Voting Rights Act of 1965,* ACLU Voting Rights Project (June 10, 2004).

Therefore, statements in the Complaint that the referred ordinance has not been precleared[12] are totally irrelevant. Since neither the State of Arkansas, nor the City, are one of the areas affected by Section 5 of the VRA, preclearance is not required. Therefore, the failure to preclear a particular ordinance does not state any kind of federal or state statutory or constitutional violation. Therefore, since the Complaint fails to state a claim on preclearance for which relief may be granted, or even to plead the elements of Section 5 of the VRA, this action should be dismissed pursuant to Fed. R. Proc. 12 (b)(6).

### *No Claim is Stated Against Thomas M. Carpenter*

The Little Rock City Attorney, Thomas M. Carpenter,[13] is listed as a party in this matter. However, absolutely no claim is made against Mr. Carpenter.

> . . . Defendant Carpenter is the city attorney for Little Rock and aided Stodola in drafting and presenting an ordinance that gave rise to the presently scheduled August 14, 2007 special election to increase the mayoral power in Little Rock past and forward where it was at the time Stodola was elected. Defendant City of Little Rock employs defendant Carpenter. . . .

*Winstead v. Stodola,* Document 1 at ¶ 4. The Complaint does not contain any allegation, however, that the drafted ordinance is discriminatory on its face. In short, the only claim is that the city attorney drafted an ordinance for consideration by the governing body of the City. However,

> local officials are absolutely immune from damage suits based upon their legislative acts.  The absolute immunity includes 'the introduction of, debate about, and voting on local legislation.' The … City Attorney's drafting of the ordinance are activities immune from suit under § 1983.

---

[12]   Winstead v. Stodola, Docket No. 1 at ¶ 11. Please note that the above map also includes jurisdictions that are subject to the provisions of the Voting Rights Act that deal with Native Americans, or with language minorities.

[13]   The pleadings refer to the nickname "Tom" Carpenter.

*Kness v. City of Kenosha,* 669 F. Supp. 1484, 1490 (E.D. Wis. 1987), *citing Reed v. Village of Shorewood,* 704 F.2d 943, 952-53 (7th Cir. 1983) *and Heiar v. Crawford Cty.,* 558 F. Supp. 1175, 1181 (W.D. Wis. 1983). [14]

Because Mr. Carpenter enjoys absolute legislative immunity for the actions Winstead finds objectionable, the Complaint fails to state a claim against Mr. Carpenter for which relief can be granted. Therefore, this allegation should be dismissed pursuant Fed. R. Civ. Proc. 12(b)(6).

### *The Actions of the Defendant Members of the Board of Directors Must Be Dismissed on the Basis of Absolute Legislative Immunity*

As noted above, absolute legislative immunity protects government officials involved in the legislative process. *See also, Redwood Village Partnership v. Graham,* 26 F.3rd 839, 841 (8th Cir. 1994); *see also, Doe v. McMillan*, 412 U.S. 306 (1973). Because of this absolute legislative immunity, Winstead fails to state a claim upon which relief can be granted. Therefore, this allegation should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6).

### *Other Nonspecific Claims Should be Dismissed*

As noted previously, the failure to state the elements of a claim in a Complaint is sufficient basis for dismissal of an allegation pursuant to Fed. R. Civ. Proc. 12(b)(6). For

---

[14] The Third Circuit has also emphatically found applicability of legislative immunity to the governing body's legal counsel:

> . . .The question then arises as to whether the . . . borough attorney [is] entitled to share in this legislative immunity. We conclude that [he is], to the extent that [his] activities are legislative in character. . . .
> 
> The position of borough attorney is somewhat different. The complaint alleges that he advised the council on the form of legislation it should use. Thus, although not a lawmaker himself, the borough attorney was acting as a legal aide in the course of legislative drafting….
> 
> In *Green v. DeCamp,* 612 F.2d 368 (8th Cir. 1980), the court extended legislative immunity to counsel for a state senate investigative committee, concluding that as a legislative aide he had the same protection as the senators. The court relied on *Gravel v. United States*, 408 U.S. 606 and *Eastland v. United States Serviceman's Fund,* 421 U.S. 491 (1975), decisions that held that the Speech or Debate Clauses of the Constitution sheltered legislative aides as well as Members of Congress. . . .
> 
> These cases support the district court's conclusion that because the borough attorney was acting in direct assistance of legislative activity he was entitled to absolute immunity. . . .

Aitchison v. Raffiani, 708 F.2d 96, 99-100 (3rd Cir. 1983).

example, Winstead claims that a Fourth Amendment (arrest and search) violation has occurred, but gives absolutely no indication of how; further, a Fifth Amendment claim (federal Due Process, Takings, and the right of a criminal defendant against self-incrimination, are not explained; nor, even a First Amendment right of expression, right to assemble, freedom of religion, or to petition the government for redress of grievances, is explained. In addition, the other statutory, tort, or common law causes of action are even mentioned. As noted in *Brown v. Simmons,* 478 F.3d 922, 923 (8th Cir. 2007), "[t]o state a claim upon which relief can be granted, *each element of the claim must be pled in the complaint.*" Id.; *see also, Dura Pharmacy, Inc. v. Broudo,* 544 U.S. 336,, 346-47 (2005). As to these other claims, that clearly has not been attempted, must less accomplished.

### *Conclusion*

For the foregoing reasons, and precedents, Winstead has failed to state a claim upon which relief can be granted. Therefore, the Complaint should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6).

                **OFFICE OF THE CITY ATTORNEY**
                **500 West Markham, Ste. 310**
                **Little Rock, Arkansas 72201**
                **(501) 371-4527**

                **By:/s/ Thomas M. Carpenter**
                      **Thomas M. Carpenter**
                      **Arkansas Identification No. 77024**

## *Certificate of Service*

 I certify that on this 13th day of August, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to:

| | |
|---|---|
| Rickey Hicks | Scott P. Richardson |
| Attorney at Law | Assistant Attorney General |
| 415 Main Street | 323 Center Street, Suite 1100 |
| Little Rock, Arkansas 72201 | Little Rock, Arkansas 72201-2610 |
| hickslawoffice@yahoo.com | scott.richardson@arkansasag.gov |

 In addition, I certify that on this 13th day of August, 2007, I mailed the foregoing and a copy of the Notice of Electronic Filing ("NEF") by United States Postal Service to the non-CM/ECF participants:

Mr. R. S. McCullough, *pro se*
Post Office Box 56530
Little Rock, Arkansas 72215

               /s/Thomas M. Carpenter