**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**


**NICOLE WINSTEAD, STEPHEN PETTUS,
ARETHA WARD, LETA ANTHONY, &
R.S. McCULLOUGH**                                                      **PLAINTIFFS**


**vs.**                              **Case No. 4:07-CV-000682 WRW**


**MARK STODOLA, in His Individual and Official Capacity,
TOM CARPENTER, in His Individual and Official Capacity,
CITY OF LITTLE ROCK,
STACY HURST, in Her Individual and Official Capacity,
BRAD CAZORT, in His Individual and Official Capacity,
MICHAEL KECK, in His Individual and Official Capacity,
DORIS WRIGHT, in Her Individual and Official Capacity,
DEAN KUMPURIS, in His Individual and Official Capacity,
KENT WALKER, in His Individual and Official Capacity,
MARTHA McCASKILL, in Her Individual and Official Capacity,
OZELL SNIDER, in His Individual and Official Capacity,
SUSAN INMAN, in Her Individual and Official Capacity,
MIKE BEEBE, in His Individual and Official Capacity, and
The STATE OF ARKANSAS**                                               **DEFENDANTS**

**BRIEF IN SUPPORT OF MOTION TO DISMISS
BY SEPARATE STATE DEFENDANTS**

"The due process clause is not a straitjacket, preventing state governments from experimenting with more efficient methods of delivering governmental services."

*Van Harken v. City of Chicago*, 103 F.3d 1346 (7th Cir. 1997).

Plaintiffs Nicole Winstead, Stephen Pettus, Aretha Ward, Leta Anthony, and R.S. McCullough, purport to bring this action against various officials of the City of Little Rock, Arkansas, Pulaski County, Arkansas, the Governor of Arkansas, and the State of Arkansas. Plaintiffs make vague allegations that the expansion of the powers of the Mayor of the City of Little Rock, as approved by the voters of the City of Little Rock at an election held on August 14, 2007, violates Plaintiffs' rights under 42 U.S.C. § 1983, the Voting Rights Act (42 U.S.C. §

1973), and the First, Fourth, Fifth, Fourteenth, and Fifteenth Amendments of the United States Constitution.

For the reasons set forth below, Plaintiffs' claims should be dismissed in their entirety.

## I.   STANDARD OF REVIEW

"[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). A complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions. *Id.* Courts evaluating motions to dismiss are not required to presume as true the legal conclusions, opinions, or deductions contained in a complaint, even if they are couched as "facts." *Silver v. H. & R. Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997).

## II.   LEGAL ANALYSIS

Plaintiffs' Petition should be dismissed pursuant to Rule 12(b)(6) for the following reasons:

1. Sovereign Immunity – Plaintiffs' § 1983 claims against the State of Arkansas and the Office of the Governor of Arkansas are barred by the Eleventh Amendment.

2. Qualified Immunity – Plaintiffs' claims, if any, against Governor Mike Beebe in his individual capacity are barred by qualified immunity.

3. Fourteenth Amendment Vagueness – Plaintiffs fail to assert facts demonstrating that the Acts referred to in their complaint are unconstitutionally vague.  Plaintiffs do not have standing to assert this claim.

4.      Section 1983 Claims – Plaintiffs have failed to plead specific facts alleging that Governor Beebe or any of the State Defendants violated any of the Plaintiffs' federal rights.

5.      Standing – Plaintiffs have failed to allege that they have standing to pursue their claims.

6.      Voting Rights Act (VRA) Claims – (a) The Governor is not a proper party under the VRA; (b) the VRA does not provide the relief that Plaintiffs seek (reapportioning the power granted to the Mayor by the electors); and (c) Plaintiffs have not pleaded facts that would satisfy the three *Gingles* preconditions to a claim under § 2 of the VRA.

7.      Fourteenth and Fifteenth Amendment Claims—Plaintiffs fail to assert facts that create the inference of discriminatory intent on the part of the State or its officials in enacting or maintaining the existing electoral system.

## 1.      The Eleventh Amendment Bars Plaintiff's § 1983 Claims Against the State of Arkansas and the Governor's Office.

The Eleventh Amendment to the United States Constitution provides "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign states."  In *Alabama v. Pugh*, 438 U.S. 781 (1978), the United States Supreme Court stated:

> There can be no doubt, however, that suit against the state and its board of correction is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.  *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945); *Morechester County Trust Co. v. Ralley*, 302 U.S. 292 (1937).  Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Article

1, Section 14, of the Alabama Constitution, which provides that:  "the state of Alabama shall never be made a defendant in any court of law or equity."

*Pugh*, 438 U.S. at 782.  The doctrine of sovereign immunity clearly applies in this case as well. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("it is well settled that the Eleventh Amendment bars . . . Section(s) 1983 claims against the State of Arkansas and its . . . agencies")

It is clear that Plaintiffs' claims against the State Defendants are barred by the doctrine of sovereign immunity. The Eleventh Amendment presents a jurisdictional bar to any suit which is in actuality directed against the state itself, whether the action is nominally instituted against the state, a state agency or instrumentality, or a state official.  *Edelman, supra*; *Pugh, supra*; *Florida Dept. of State v. Treasury Salvors*, 458 U.S. 670 (1982).  The Eleventh Amendment also bars suits against state employees when, although not specifically named, the state is the real, substantial party in interest.  *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984).

Neither the State of Arkansas nor the Office of the Governor,[1] an agency of the State, have consented to suit in federal court, and Congress did not abrogate the States' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983.  *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991); *Quern v. Jordan*, 59 L.Ed.2d 358, 366-69 (1979).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311 (1989).  A suit against a State agency is barred by the Eleventh Amendment just as a suit against the State itself.  *Id.* Moreover, under 42 U.S.C. §1983 Defendants the State of Arkansas and the Office of the

---

[1]    A claim against Governor Beebe "in his official capacity" is a suit against his office: the Office of the Governor of Arkansas.  For clarity's sake, this separate defendant will be referred to as the "Office of the Governor" in this brief.

Governor are not "persons" amenable to suit under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)(state is not a 'person' within the meaning of § 1983); *Davis v. Buffalo Psychiatric Cente*r, 613 F.Supp. 462 (W.D.N.Y. 1985)(state and its agencies not 'persons' within meaning of § 1981); *Coffin v. South Carolina Dep't. of Social Svcs.*, 562 F.Supp. 578 (D.C.S.C. 1983)(state department of social services not 'person' within meaning of § 1985).  Finally, although Congress has the power with respect to the rights guaranteed by the Fourteenth Amendment to abrogate a state's Eleventh Amendment immunity, that intent was never expressed in 42 U.S.C. § 1983.  As a result, Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 must be dismissed as to the State of Arkansas and the Office of the Governor.

**2.     Qualified Immunity Bars Plaintiffs' § 1983 Claims Against Governor Mike Beebe in his Individual Capacity**

Public officials sued in their individual capacities are shielded from damage liability so long as their conduct does not violate "clearly established" federal statutory or constitutional rights "of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Qualified immunity is immunity from being sued, not just a defense to liability. *Bradley v. Arkansas Dept. of Educ.*, 301 F.3d 952 (8th Cir. 2002).

Governor Beebe is entitled to qualified immunity a) if plaintiffs have failed to demonstrate a constitutional violation by Governor Beebe or b) if the federal right asserted by Plaintiffs was not "clearly established" at the time of the alleged violation.  *Siegert v. Gilley*, 500 U.S. 226 (1991); *Manzano v. South Dakota Dep't of Social Servs.*, 60 F.3d 505, 509 (8th Cir. 1995); *Thomas v. Hungerford*, 23 F.3d 1450, 1452 (8th Cir. 1994).   A right is "clearly established" for qualified immunity purposes if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.  In other words, the unlawfulness of the defendant's conduct must be apparent in light of pre-existing law.

*Swenson v. Trickey*, 995 F.2d 132, 133-34 (8th Cir. 1993), *cert. denied*, 126 L.Ed.2d 468.  A general legal proposition is insufficient to overcome qualified immunity, the legal rule alleged to be violated must be clearly established in a particular and relevant sense given the facts and circumstances confronting the public official at the time of the alleged violation.  *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).  If the official makes a reasonable mistake as to what the law requires in the situation he is confronted with, then he is entitled to immunity.  *Saucier v. Katz*, 533 U.S. 194, 205-206 (2001).  This is especially so where the law does not give a clear answer as to the constitutionality of a particular action.  *Id.*

When the question of the constitutionality of a government actor's decisions turns on a complex, multi-factored analysis including a multi-factor balancing test, the qualified immunity bar is difficult to overcome.  *Abdouch v. Berger*, 426 F.3d 982 (8th Cir. 2005).  "Even where this balancing reveals a constitutional violation, qualified immunity still applies unless the constitutional violation was so clear that an objectively reasonable official under the circumstances would have recognized the disproportionality."  *Id.* at 987.

Here, Plaintiffs' Complaint is devoid of any allegation of any action or inaction on the part of Governor Beebe that gives rise to their Complaint.  Plaintiffs have identified no federal rights, clearly established or not, that they believe that Governor Beebe has violated.  The only mention of Mike Beebe in the Complaint is to identify him as the Governor of the State of Arkansas.  Therefore, Plaintiffs' Complaint against Governor Mike Beebe in his individual capacity is barred by Governor Beebe's qualified immunity.

### 3.   Acts 629 and 729 of 2007 are not "Void for Vagueness"

Under the due process clause, a law must provide fair notice of the conduct that it prohibits.  A law is unconstitutionally vague only if it "is impermissibly vague in all of its

applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186 (1982).  The regulation of conduct in the law must give "a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 498, 102 S.Ct. at 1193, quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298 (1972).  In other words, a law is impermissibly vague only if it forbids or requires conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to the law's application to the circumstances.  *Stephenson v. Davenport Community Sch. Dist.*, 110 F.3d 1303 (8th Cir. 1997).  Also, a law will not be stricken on grounds of vagueness unless it provides insufficient limits for its enforcement and thereby engender arbitrary and discriminatory enforcement. *Id.*  Non-criminal statutes are held to a more lenient vagueness standard than criminal statutes "because the consequences of imprecision are qualitatively less severe." *Flipside*, 455 U.S. at 498-99.

Of course, the due process clause only applies when a person stands to lose a life, liberty, or property interest.  A person must demonstrate that one of these interests is at stake when seeking to invoke the protections of the Fourteenth Amendment's due process clause.  *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005).  The vagueness doctrine only applies where there is a regulation of or sanction for conduct. *CAVCO Industries v. Industrial Commission of Arizona*, 631 P.2d 1087 (Ariz. 1981).  Further, if the law in question does not reach a substantial amount of constitutionally protected conduct, the vagueness challenge must fail.  *Woodis v. Westark Community College*, 160 F.3d 435 (8th Cir. 1998).

Clearly the two laws at issue do not prohibit any activity of the Plaintiffs. If Plaintiffs are claiming that the law cannot be reasonably understood by the Board of Directors of the City of Little Rock, they do not have standing to raise this claim.  Acts 689 and 729 clearly provide an

option to municipal governments, should they and their electorate choose to exercise that option.[2]  Plaintiffs have not suggested which portion of these laws is impermissibly vague or how it might be so.  In fact, the laws are sufficiently clear in the additional authority they grant to cities operating under the city manager form of government.  Accordingly, Plaintiffs' Complaint should be dismissed.

### 4. Plaintiffs' Section 1983 Claims Should be Dismissed Because They Fail to Plead Specific Facts Alleging that any State Official Violated a Federal Right.

The only paragraph in Plaintiffs' Complaint that refers to anything related to the State is a vague, conclusory assertion that two Acts of the General Assembly are "unconstitutionally vague and ambiguous," but the Petition makes no factual allegation that any of the named state Defendants engaged in any prohibited conduct (i.e. intentional racial discrimination). Complaint ¶ 14. Although a complaint need not assert every fact that would establish a plaintiff's right to recover, the Complaint here fails to satisfy even the relatively liberal standard for notice pleading under the Federal Rules.  Fed. R. Civ. Pro. 8.  The Complaint states legal conclusions, but is devoid of any facts that could put the State Defendants on notice of what conduct is alleged to make them subject to legal liability.  Indeed, Plaintiffs' legal conclusions do not even appear to be directed at the Separate State Defendants.  Courts in the Eighth Circuit will not "blindly accept the legal conclusions drawn by the pleader."  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Plaintiffs' have failed to include even a single allegation that the State, the Governor's Office, or the Governor himself did anything to violate their constitutional rights, much less that they engaged in intentional discrimination.

---

[2]     To the extent that there is overlap in the two Acts, the language in Act 729 will control.  *Wells v. State*, 337 Ark. 586, 991 S.W.2d 114 (1999).

As to the State, the Plaintiffs' have alleged nothing more than that two Acts of the General Assembly give certain cities the option to change their form of government.

> In the absence of state constitutional provisions safeguarding it to them, municipalities have no inherent right of self-government which is beyond the legislative control of the state. A municipality is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will. *See Barnes v. District of Columbia*, 91 U. S. 540, 544, 545, 23 L. Ed. 440. . . . The power of the state, unrestrained by . . . the Fourteenth Amendment, over the rights and property of cities held and used for 'governmental purposes' cannot be questioned.

*City of Trenton v. State of New Jersey*, 262 U.S. 182, 43 S.Ct. 534 (1923).

> "Municipal corporations are instrumentalities of the State for the convenient administration of government within their limits." *Louisiana ex rel. Folsom v. Mayor of New Orleans*, 109 U.S. 285, 287, 3 S.Ct. 211, 213, 27 L.Ed. 936; *cf. Reynolds v. Sims*, 377 U.S. 533, 575, 84 S.Ct. 1362, 1388, 12 L.Ed.2d 506. They have only such powers as are delegated them by the State of which they are a subdivision, and when they act they exercise the State's sovereign power. *Avery v. Midland County*, 390 U.S. 474, 480, 88 S.Ct. 1114, 1118, 20 L.Ed.2d 45; *Breard v. Alexandria*, 341 U.S. 622, 640, 71 S.Ct. 920, 931, 95 L.Ed. 1233. City governments are not unaccountable to the public but are subject to direct popular control through their own electorates and through the state legislature.

*City of Lafayette, La. v. Louisiana Power & Light Co*., 435 U.S. 389, 429-430, 98 S.Ct. 1123 (1978).  Cities in Arkansas have only such rights and powers as are granted by the General Assembly. Ark. Const. Art. XII § 3 ("The General Assembly shall provide, by general laws, for the organization of cities. . . .").  Accordingly, the Arkansas Legislature has the authority to abolish municipal offices as well as to change, alter, or amend them as it sees fit.  62 C.J.S. Municipal Corporations § 332.  The legislature has this power over the office of the mayor and the officers who make up the governing council of the city (here the Board of Directors).  62 C.J.S. Municipal Corporations § 370.

Plaintiffs in this case have no right to a particular form of municipal government.  The state legislature is free to allow the citizens of Arkansas cities, including Little Rock, to

experiment with their form of government as they see fit.  Plaintiffs have failed to identify in their complaint any federal restriction on the state legislature's ability to do so.  Certainly, Plaintiffs have failed to identify in their complaint any way in which the State, the Governor's Office, or Governor Beebe have acted beyond any perceived federal boundary applicable to their case.

The State Defendants should also be dismissed because Plaintiffs' Complaint fails to state facts upon which injunctive relief is authorized against them.  The theory of the Complaint appears to be that changing the City of Little Rock from a city manager to a mayoral form of municipal government dilutes the power of African-American City Directors in Little Rock.  As such, Plaintiffs' challenge appears to be to the effect of changing the city government in Little Rock, not the authority given to cities operating under the city manager system (of which there are several) to shift to a mayoral system. In other words, Plaintiffs' complaint seems to lie with decisions made by city leaders, not the State or the Governor.  Therefore, Plaintiffs' claims pursuant to §1983 should be dismissed with prejudice for failure to state a claim.

### 5.     <u>Plaintiff's Lack Standing to Assert the Claims in their Complaint</u>

"[T]he irreducible constitutional minimum of [Article III] standing" requires a plaintiff to demonstrate each of three propositions:  1) that she has suffered an "injury in fact," i.e. the invasion of a legally-protected interest that is not only concrete and particularized but also actual or imminent; 2) that a causal connection exists between the injury and the conduct of which complaint is made, i.e. that the asserted injury is fairly traceable to the challenged action of the defendant; and 3) that the asserted injury will be "redressed" by a favorable decision for the Plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  Plaintiff must also demonstrate

that injury complained of falls within the "zone of interests" of the law whose protection the plaintiff seeks to invoke. *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154 (1997).

The plaintiff bears the burden of establishing these elements throughout her case especially when injunctive relief is sought. *Id*. "Past exposure to illegal conduct does not, in itself, show a present case or controversy regarding injunctive relief." *Id*. at 564. A plaintiff must show that she "has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct." *Los Angeles v. Lyons*, 461 U.S. 95 (1983). If Plaintiff is no longer subject to the alleged unconstitutional deprivation, standing and, hence, federal jurisdiction is lost and the case should be dismissed. *Id.*

The burden is on the plaintiff in a Voting Rights Act case to clearly allege facts that would demonstrate the he or she is the proper party to invoke the federal judicial power. *United States v. Hays*, 515 U.S. 737, 744-745, 115 S.Ct. 2431, 2436 (1995)("We therefore reject appellees' position that 'anybody in the State has a claim'"). A plaintiff cannot carry this burden by alleging a "generalized grievance against allegedly illegal governmental conduct." *Id.* A plaintiff must allege that she has been harmed in some genuine way, "not that he can imagine circumstances in which he could be affected by the agency's action." *United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416 (1973). In the equal protection context, only "those persons who are personally denied equal treatment by the challenged discriminatory conduct" have standing to bring a federal claim. *Id.*

Here, Plaintiffs have not alleged that they have suffered any injury-in-fact as a result of any action by the State of Arkansas, the Governor's Office, or Governor Beebe. Plaintiffs' allegations appear to be that because the Board of Directors and the voters of the City have

chosen to give the Mayor veto power over the Board, that the votes of individual board members are not as powerful as they once were.  Plaintiffs cite no authority for this theory.

Plaintiffs allege only that they are citizens of the City of Little Rock. Complaint ¶ 2. Nowhere in the complaint do they allege that they are registered voters or that the strength of their individual votes to elect city directors of their choice has been impacted by the two Acts of the General Assembly referenced in their Complaint. Ex. A, Act 689 of 2007; Ex. B, Act 729 of 2007.  Similarly, Plaintiffs have failed to allege that they reside in a city ward or district whose representative is adversely affected by the change in city government in some fundamentally different way from other Board members. *Hays*, 515 U.S. 737, 115 S.Ct. 2431.  The Supreme Court has consistently held that in order to have standing to bring a claim regarding voting rights the plaintiff must actually reside in a voting district affected by the allegedly unconstitutional practice. In short, Plaintiffs have failed to allege that they have suffered any injury-in-fact sufficient to give them standing under federal law, and thus their claims should be dismissed.

6.      **Plaintiffs' VRA Claims Should Be Dismissed Because They have Failed to State A Violation of the Act's Vote Dilution Provisions.**

Plaintiffs allege that Acts 689 and 729 should have been pre-cleared under Section 5 of the Voting Rights Act and the Act's vote dilution provisions in Section 2.  Counsel for Plaintiffs acknowledged at the preliminary injunction hearing the fact that Section 5 of the VRA does not apply to the State of Arkansas or its political subdivisions.  Section 2 provides:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973(f)(2) of this title, as provided in subsection (b) of this section.

(b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political process leading to

nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: **Provided,** that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973 (emphasis in original).

A properly pleaded vote dilution claim would demonstrate how a particular standard, practice, or procedure operates "to cancel out or minimize the voting strength" of a minority group. *White v. Regester*, 412 U.S. 755, 765 (1973). The right to "undiluted" voting strength is a guarantee of equal opportunity in voting, ensuring that a minority group is not denied, on account of race, the opportunity to exercise an electoral power that is commensurate with its population. *Thornburg v. Gingles*, 478 U.S. 30, 88 (1986) (O'Connor, J., concurring); *see also Hall v. Virginia*, 385 F.3d 421 (2004).

As a matter of law, Plaintiffs' Section 2 VRA claims should be dismissed because: first, the Governor's Office and the Governor are not the proper defendants in a suit under the VRA; second, the VRA, does not provide, either on its face or as applied by the courts, the relief that Plaintiffs seek to secure through this lawsuit: rewriting a city's chosen structure of governance; and third, Plaintiffs have not pleaded facts that would satisfy the three *Gingles* preconditions to a § 2 claim.

   a. <u>The Governor's Office and the Governor Are Entitled to Dismissal From this Lawsuit Because They Are Not Proper Parties Under the VRA.</u>

The VRA specifically prohibits a "State or political subdivision" from engaging in any practices which deny or abridge a person's right to vote on the basis of race. Section 1973(c)(2)

defines "political subdivision" as "any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting."  State officials do not fall within this definition in either their official or individual capacities.  *See African-America Citizens for Change v. Robbins*, 825 F. Supp. 885, 891 (E.D. Mo. 1993), *aff'd*, 24 F.3d 1052 (1994). Because Plaintiffs contend that they have a claim under section two of the VRA, the State would be the only proper defendant in this case.  Thus, all of the state officials should be dismissed.

The state officials should also be dismissed from this lawsuit because there is no allegation that they engaged in any practice or established any prerequisite or standard which denies or abridges any of the Plaintiffs' rights to vote.  The Acts of the General Assembly complained of implemented no practice or prerequisite to voting that limits any voter's right or ability to participate in an election.  Therefore, neither the Governor's Office nor the Governor have engaged in any action which violates the VRA and therefore should not be subject to defending a lawsuit brought under its provisions.

b.       The VRA Does Not Provide Remedies for the Type of Conduct Plaintiffs Allege.

The purpose of the Voting Rights Act was to attempt to ensure that minority voters have similar opportunities, in comparison to other voters of similar strength in the jurisdiction, to form a majority in their district, and thereby elect a candidate of their choice.  *See Gingles*, 478 U.S. at 44.  As the Sixth Circuit observed in *Nixon v. Kent County*, "the Voting Rights Act [is] aimed only at ensuring equal political opportunity: that every person's chance to form a majority is the same, regardless of race or ethnic origin."  76 F.3d 1381, 1392 (6th Cir. 1996).  It is important to note as well that the phrase "a candidate of their choice" does not mean a candidate of a particular race.  *Armour v. Ohio*, 775 F.Supp. 1044, 1060 (N.D. Ohio 1991)(noting that claim that a voting group has the right to elect a candidate of that group's same race "misapprehend[s]

the requirements of the Voting Rights Act"); *Harvell v. Blythville School Dist. No. 5*, 71 F.3d 1382, 1386 (8th Cir. 1995)(en banc)("Such stereotyping runs afoul of the principles embodied in the Equal Protection clause.").

Plaintiffs' request no relief against the State that they suggest will resolve their complaints.  The Complaint fails to identify any way in which Act 689 or 729 set up any sort of classification along racial lines or burden any one group over another.  Plaintiffs' actual complaints are not about any issue addressed by the VRA but, instead, are complaints about their general disagreement with how a majority of the Board of Directors and the voters of the City of Little Rock have chosen to structure their government.  Plaintiffs do not, and cannot, even allege that the vote passing Acts 689 and 729 in the General Assembly, the vote of the Board of Directors, or the recent election was decided along racial lines.

Plaintiffs' request that the Court ensure the success of the wishes of the representatives with whom the Plaintiffs agree on a particular issue is not encompassed by the VRA.  The VRA does not direct a particular outcome in an election, only that all parties will have the opportunity to participate in the electoral process.  As Judge Eisele explained in *Turner*, "[the VRA] is not violated by a state legislature simply because that legislature does not enact a districting plan that maximizes [minority] political power and influence." *Turner v. State of Arkansas*, 784 F. Supp. 553, 573 (1991).  Congress did not intend to provide minority voters with a right to the "maximum feasible minority voting strength." *Gingles*, 478 U.S. at 94 (O'Connor, J., concurring).  A right to the maximum minority voting strength would be tantamount to a right to proportional representation, which is expressly prohibited by the Act.  *See* 42 U.S.C. § 1973(b) ("*Provided* that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.")(emphasis in original); *See*

*Turner*, 784 F. Supp. at 577.  Because Plaintiffs have not pleaded any valid cause of action, their claim should be dismissed.

        c.      <u>Plaintiffs have Not Pleaded Any Facts Supporting Any of the *Gingles* Preconditions</u>.

In *Thornburg v. Gingles*, *supra*, the United State Supreme Court construed Section 2 of the VRA and established three threshold conditions to the maintenance of a VRA claim.  The minority group must be able to demonstrate (1) that it is sufficiently large and compact enough to constitute a majority in a single member district, (2) that it is politically cohesive, and (3) that the majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate.  *Gingles*, 478 U.S. at 50-51.  The failure of a minority group to satisfy any of these three preconditions means that it cannot sustain a claim under the VRA that the challenged electoral practice or procedure "impede[s] the ability of minority voters to elect representatives of their choice."  *Id*. at 48.  "The legislative history of § 2 indicates that the presence of racially polarized voting will ordinarily be the keystone of a vote dilution case." *Buckanaga v. Sisseton Independent School Dist.*, 804 F.2d 469 (8th Cir. 1986).

As the United States Supreme Court observed in *Growe v. Emmison*, 501 U.S. 25 (1993), a minority group claiming vote dilution must establish that it "has the potential to elect a representative of its own choice in some single-member district."  *Growe*, 507 U.S. at 40.  And, "[u]nless minority voters possess the potential to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by the structure or practice."  *Gingles*, 478 U.S. at 50 n. 17; *Cano v. Davis*, 211 F. Supp. 2d 1208, 1231 (C.D. Cal. 2002) (observing that "unless the minority group can establish that an effective majority-minority district can be created, a vote dilution claim is not cognizable because there is no minority voting power to dilute."), *aff'd*, 537 U.S. 1100 (2003).

"Ultimately, the right to 'undiluted' voting strength in Section 2 is a guarantee of equal opportunity in voting, ensuring that a minority group is not denied, on account of race, color, or language minority status, the opportunity to exercise an electoral power that is commensurate with its population in the relevant jurisdiction." *Hall*, 385 F.3d at 429.

Plaintiffs have not demonstrated how Acts 689 and 729 transgress Section 2 of the VRA. They have not even alleged, nor could they, that the votes passing Acts 689 and 729 in the General Assembly, or even those of the Board authorizing the change, were cast along racially identifiable lines.  To the extent that the Acts impact a city board member's voting power, all board members are affected equally without regard to their race.  The Complaint simply fails to allege any fact supporting a conclusion that these laws of general applicability have served to weaken one group of bloc voters as compared to another group of bloc voters.  Plaintiffs' failure to demonstrate any of these essential elements is fatal to their VRA claim.

> **7.**　　**Plaintiffs' Fourteenth and Fifteenth Amendment Claims Should be Dismissed Because They Fail to Assert Facts Which Create the Inference of Discriminatory Intent on the Part of the State or its Officials in Enacting or Maintaining the Existing Electoral System**.

Plaintiffs never contend that Acts 689 and 729 were enacted with discriminatory intent in violation of the Equal Protection Clause of the Fourteenth[3] and Fifteenth Amendments.  "A determination of discriminatory intent is a requisite to a finding of unconstitutional vote dilution" under the Fourteenth and Fifteenth Amendments. *Rogers v. Lodge,* 458 U.S. 613, 621 (1982)

---

[3]　　Plaintiffs invoke the Fifth Amendment, without elaboration, in their Complaint. The Fifth Amendment's due process and equal protection clauses apply only to the federal government, not state government which is subject to the similar clauses in the Fourteenth Amendment. *Warren v. Government Nat. Mortg. Ass'n*, 611 F.2d 1229 (8th Cir. 1980); *Bartikus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676 (1959). The clauses in the two Amendments are construed in substantially the same way. *Fraternal Order of Police v. United States*, 152 F.3d 998, 1002 (D.C.Cir.1998)

(internal citations omitted); *Voinovich v. Quilter,* 507 U.S. 146, 158-60 (1993); *Davis v. Bandemer,* 478 U.S. 109, 127 (1986); *Turner*, 784 F. Supp. at 579.

"[I]n order for the Equal Protection clause to be violated, [the conduct complained of] must ultimately be traced to a racially discriminatory purpose.'" *Rogers v. Lodge*, 458 U.S. 613, 617 (1982) (*quoting Washington v. Davis*, 426 U.S. 229, 240 (1976)).  "The ultimate issue in a case alleging unconstitutional dilution of the votes of a racial group is whether the [voting scheme] under attack exists because it was intended to diminish or dilute the political efficacy of that group." *Rogers*, 458 U.S. at 621.  Plaintiffs must also prove that such intentional discrimination has an actual discriminatory effect. *Turner*, 784 F. Supp. at 579.  When a challenged law is neutral on its face, even if it "has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection clause only if that impact can be traced to a discriminatory purpose." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2293 (1979).

Here, Plaintiffs' have failed to assert any facts which would allow this Court to infer any discriminatory animus by the State or its officials.  This omission requires summary dismissal of Plaintiffs' Fourteenth and Fifteenth Amendment claims.

## III.   CONCLUSION

For the reasons stated in this Brief, the Separate State Defendants respectfully request that their Motion to Dismiss be granted and that Plaintiffs' Complaint be dismissed with prejudice.


Respectfully submitted,

DUSTIN McDANIEL
Attorney General

18

/s/ Scott P. Richardson
Scott P. Richardson #01208
Arkansas Attorney General's Office
323 Center Street, Suite 1100
Little Rock, AR 72201
(501)682-1019
(501)682-2591 - fax
E-mail: scott.richardson@arkansasag.gov

ATTORNEYS FOR SEPARATE
DEFENDANTS THE STATE OF
ARKANSAS, GOVENOR MIKE BEBEE,
IN HIS OFFICIAL CAPACITY AND IN
HIS INDIVIDUAL CAPACITY

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. Thomas M. Carpenter                Ms. Karla Moore Burnett
tcarpenter@littlerock.org              kburnett@co.pulaski.ar.us

William C. Mann , III                  Amanda Mankin Mitchell
bmann@littlerock.org                   amankin@co.pulaski.ar.us

Mr. Rickey H. Hicks
hickslawoffice@yahoo.com

I hereby certificate that on August 29, 2007, I mailed the document by United States Postal Service to the following non CM/ECF participants:

Mr. R.S. McCullough
P.O. Box 56530
Little Rock, AR 72215

/s/ Scott P. Richardson
SCOTT P. RICHARDSON